## ELIZA KEMPNER ET AL. V. STATE OF TEXAS.

### Decided February 4, 1903.

**1.—Patent to Land—Void Certificate—Innocent Purchaser.**

As against the State, there can be no such thing as an innocent purchaser of land where the officer who attempts to issue title acts without authority of and contrary to law, as where the Commissioner of the General Land Office issues a duplicate certificate, where no original certificate ever existed, and patents the land located thereby.

**2.—Same—Case Stated.**

A claimant whose application for land was rejected by the investigating board of the Republic in 1841, brought suit in the district court to establish it, and obtained judgment, which was set aside on motion for new trial. He had taken out a certificate showing his recovery, before the motion was filed, and the Republic enjoined the Land Commissioner from issuing a land certificate thereon, and obtained judgment against plaintiff's claim on final hearing, which was affirmed on appeal (Dallam, 588). In 1874 the Commissioner of the General Land Office issued a duplicate certificate to the heirs of claimant, based on proof of loss of the supposed original, and patent issued thereon the following year. Held, that the State could recover the land from a remote grantee of the patentees, who relied on the patent and was ignorant, in fact, of the invalidity of the certificate.

Appeal from the District Court of Travis. Tried below before Hon. R. L. Penn.

The State brought suit against Mrs. Kempner and others to cancel a patent and recover land. Plaintiff had judgment and defendant Kempner appealed.

*Walton & Walton* and *A. S. Phelps,* for appellants.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant-Attorney-General, for appellee.

KEY, ASSOCIATE JUSTICE.—This is a suit by the State to cancel a patent and recover a league and labor of land patented to Eli Langford. Mrs. Eliza Kempner and the heirs of Eli Langford were made defendants, and upon trial judgment was rendered for the State, as prayed for, and Mrs. Kempner has appealed.

The case is submitted in this court on the following testimony: "In the year 1841 Eli Langford made application to the investigating board appointed under an act of the Congress of the Republic of Texas of January 29, 1840, for a certificate for a league and labor of land, which said application was rejected by said board as not being a genuine and legal claim against the government, as shown by the report of said investigating board in the General Land Office.

"On the 24th day of September, 1841, the said Eli Langford filed his petition in the District Court of Red River County, Texas, against the Republic, setting up his said application to said investigating board for a certificate for a league and labor of land and its rejection as fraudulent, and praying that the court issue to him a certificate for a league

and labor of land. This cause was tried in the District Court of Red River County on the 14th day of October, 1841, and upon a verdict of the jury in his favor, the court rendered judgment that the plaintiff Eli Langford, have and recover of the Republic his land as assessed by the jury, and that a certificate issue to him for a league and labor of land.

"The records and papers with regard to this case in the District Court of Red River County do not contain a motion for new trial nor a judgment or order of the court thereon, but it appears from said papers on file that on the 6th day of November, 1841, the district attorney of that judicial district filed in said court a petition for injunction, which, with the indorsements thereon, is as follows:

" 'The Republic of Texas, County of Red River.—To the Hon. John M. Hansford, Judge of the 7th Judicial District: The petition of the undersigned district attorney Pr. term. for the 7th Judicial District would represent unto your honor that at the fall term of the District Court for the year 1841, in and for the county of Red River and the Republic of Texas, begun and held at the town of Clarksville, a certain Eli Langford brought his appeal from the Investigating Board of Land Commissioners to said court, and after issue joined and a verdict in his favor for one league and labor of land; and that before a motion was made in said case for a new trial by the Republic, the said Langford applied to the clerk of said district court, immediately after the verdict rendered by the jury, for his certificate for one league and labor of land, and received his certificate from the clerk as aforesaid for one league and labor of land, which was certified by your honor; and the petition of your orator would further represent to your honor, that, on the last day of the term of said court, petitioner moved for a new trial upon the part of the Republic, which said motion was granted, therefore your petitioner would pray that an injunction be granted prohibiting the Commissioner Genl. of the Land Office, from granting a certificate unto the said Eli Langford for one league and labor of land, until the final issue of said suit; and that the said injunction be made perpetual. And your petition as in duty bound, will ever pray, etc. Jesse Bruton, Jr., District Atty. Pro. Tem.'

" 'The Republic of Texas, Red River County. Personally appeared before me, Jesse Bruton, Jr., District Attorney Pro. Tem. for Red River 7th Judicial District and says the facts set forth in the foregoing petition are true. Subscribed and sworn to before me, this 5th day of November, 1841. J. Bruton, Jr., District Atty Pro. Tem. John M. Hansford, District Judge.

" 'Republic of Texas, Red River County. The clerk of the district court will issue the writ of injunction as prayed for in the above petition. Given under my hand this 5th November, 1841. John M. Hansford, District Judge.' Indorsed: No. 376. Republic of Texas v. Eli Langford. Petition for Injunction. Filed 6 Nov., 1841. W. H. Vining, Clk. D. C. R. R. Co.'

"And also that on the 2d day of December, 1841, a writ of injunction issued upon the prayer of said application of the district attorney, which with the indorsements thereon is as follows:

" 'The Republic of Texas, Red River County. To the Commissioner General Land Office of the Republic of Texas.—Greeting: Whereas, Jesse Bruton, Jr., district attorney pro. tem. of the Seventh Judicial District, has filed in the District Court for the county aforesaid his petition for injunction directed to the Hon. John M. Hansford, judge and chancellor of the District Court for the Seventh Judicial District, showing that, among other things, that at the fall term of the district court, in the year 1841, in and for the county of Red River and Republic of Texas, aforesaid, that Eli Langford brought his appeal from the Investigating Board of Land Commissioners to the court and after issue joined and a verdict in his favor for one league and labor of land that before a motion was made in said cause for a new trial by the Republic, the said Eli Langford, aforesaid, applied to the clerk of said District Court immediately after verdict rendered by the jury for his certificate for one league and labor of land, and received his certificate as aforesaid for one league and labor of land, which was approved by the Hon. Court, and whereas on the last day of the term aforesaid the said Jesse Bruton, Jr., district attorney pro tem, as aforesaid, moved for a new trial on the part of the Republic, which said motion was granted. Thereupon said district attorney, as aforesaid, prayed that an injunction be granted enjoining and prohibiting the Commissioner of the General Land Office from granting a certificate unto the said Eli Langford for one league and labor of land until the final issue and decision of said suit. In pursuant of his Hon's fiat dated 5 Nov. 1841, now these are therefore to command you in the name of the Republic of Texas restraining and prohibiting you, the said Commissioner of the General Land Office of said Republic from issuing a certificate to the said Eli Langford, as aforesaid mentioned in complainant's petition & you are commanded to obey and observe this mandate and order of this writ of injunction, under the pains and penalties incident to a contempt of the court aforesaid.

" 'To the Sheriff of Travis County & Republic aforesaid, Greeting: You are hereby commanded to make known the foregoing writ of injunction to the Commissioner General of the Land Office as aforesaid and due return make to the clerk's office of said court on the return day hereof, certifying what has been done on the premises. Given under the seal of said court and under my official signature at office in Clarksville, this 2 day of December, A. D. 1841. [L. S.] W. H. Vining, Clk. D. C. R. R. Co. Indorsed: No. 375. Republic of Texas vs Eli Langford. Injunction. Issued 2 day of December, 1841. W. H. Vining Clk. D. C. R. R. Co.

" 'Came to hand Dec. 30th, 1841. Executed by serving a copy Jany 3rd, 1842. Charles F. King, Sheriff T. C. Sheriff's fees, $2.00. Charles F. King, Sheriff T. C.'

"And it was proven that on the 5th day of March, 1842, a notice of a new trial was issued by the clerk of the District Court of Red River County to the said Eli Langford, which, with the indorsements thereon, is as follows:

" 'The Republic of Texas, County of Red River. To the Sheriff of said County, Greeting: You are hereby commanded to make known to Eli Langford, whereas, in the suit which was tried at our last past District Court between Eli Langford, plaintiff, and the Republic of Texas, defendant, and said cause determined in favor of said Langford, and verdict for one league and labor of land, upon motion of Jesse Bruton, Jr., Di. Attorney pro tem, new trial has been granted the Republic, and said cause stands for hearing at our next term of the district court for said county. Given under my official signature at office in Clarksville and under the seal of said court, this 5th day of March, 1842. W. H. Vining, Clk. D. C. R. R. Co. Indorsed: Republic of Texas No. 176 vs Eli Langford. Notice. Issued 5 day of March, 1842. W. H. Vining, Clrk. D. C. R. R. Co.

" 'Came to hand and executed on Eli Langford by reading to him the within notice. Edward West, Sheriff.'

"On April 28, 1842, said cause was continued by agreement of the parties to the next term of the court.

"That thereafter, on the 7th day of October, 1842, the said Eli Langford filed in said cause a deed from himself to the Republic of Texas, which said deed conveyed to the Republic of Texas and to the people of said Republic in their political and national character and capacity 'any and all grant or grants of land heretofore made or issued to me or to my wife, Mary Langford, under the colonization laws of Coahuila and Texas, heretofore in force, situated within the limits of Lavalla's Colony, so called or elsewhere within the boundaries of said Republic.' Which said instrument was executed on the 7th day of October, 1842.

"That on October 14, 1842, the cause came on for trial before a jury, the judgment reciting that the plaintiff appeared by atty. and also appeared the dist. atty. and upon a verdict of the jury finding the facts, the court rendered judgment that the plaintiff is not entitled to recover and that the Republic do recover of Eli Langford all costs in this behalf expended and with execution, from which judgment the said Eli Langford appealed to the Supreme Court of the Republic. On February 17, 1843, the said Eli Langford filed his appeal bond in said cause.

"On June 24, 1844, upon hearing said cause in the Supreme Court of the Republic, it was ordered, adjudged and decreed by that court that the judgment below be in all things affirmed; that the appellant pay the costs of this cause in this court expended and that this decision be certified below for execution. Upon which said judgment of affirmance mandate of the Supreme Court was issued and filed in the District Court of Red River County, July 22, 1844. The opinion and decision of the Supreme Court is published in Dallam, p. 588, the cause being styled Eli Langford vs. the Republic. It was proven that the original

papers in said cause in the Supreme Court have been lost or mislaid and can not now be found.

"Eli Langford died about the year 1850. The defendants named in plaintiff's petition, with the exception of Mrs. Eliza Kempner and Eli and Levi Langford, are the only heirs of said Eli Langford. There was no evidence that any one of the defendants ever saw or had possession of the certificate for a league and labor of land issued by the District Court of Red River County to said Eli Langford, nor was there any evidence that any such certificate was issued except such as is contained in the recitals in the petition for injunction and writ of injunction hereinaforesaid. The only testimony on this subject was as follows: One of the defendants, Asa Langford, testified by deposition with regard to the original certificate:

" 'From my own personal knowledge, I know nothing about it, but from common rumor and family history I understood there was one issued. In about September 29, 1874, J. J. Erwin and Wren & Co. came to my house in Lampasas County, Texas, and represented to me that I was entitled to a league and labor of land, as heir of my father Eli Langford, and wanted to know if I had the original certificate and proposed to locate and perfect title to same for one-half of the land. We made search and did not find the original certificate. I understood that he was to procure a duplicate certificate and locate and survey and perfect the title to the land, and to that effect I went into a written contract with him.'

"In 1874, J. J. Erwin acting for himself and T. L. Wren, procured from the aforesaid heirs of Eli Langford, a power of attorney authorizing them to procure a duplicate certificate in lieu of the original certificate said to have been issued by the District Court to Eli Langford for one league and labor of land, and to locate the same, for which they were to receive in consideration of their services and expenses one-half of the land. Upon this, the said T. L. Wren, acting for the firm composed of T. L. Wren and J. J. Erwin, made application to the Commissioner of the General Land Office of the State of Texas for the issuance of a duplicate certificate, advertised in a newspaper a notice of the loss of the original certificate and of the application for the issuance of the duplicate, the result of which action was that the Commissioner of the General Land Office issued a duplicate certificate and delivered the same to the firm of T. L. Wren & Co. T. L. Wren, acting for the heirs of Eli Langford, made the application and affidavit, and the firm of T. L. Wren & Co. paid the expenses, and the duplicate certificate was delivered to the said T. L. Wren, which was afterwards located in Hartley County by the said T. L. Wren and J. J. Erwin; said J. J. Erwin individually paying the expenses of locating the duplicate certificate, the amount being something over $500; the fees for procuring the patent, advertising, etc., amounted to about $65, in consideration of which the heirs of Eli Langford executed to said J. J. Erwin a deed to 2302½ acres, being the west half of said league and labor of land.

"After the location of said certificate in Hartley County a patent was issued by the State of Texas, on the 14th day of June, 1875, to Eli Langford, his heirs and assigns, for said league and labor of land, being patent No. 118, Vol. 21, and being the land sued for and described in plaintiff's petition.

"By subsequent conveyances constituting a regular chair of title by deeds of general warranty this west half of said league and labor of land passed to Mrs. Eliza Kempner, one of the defendants in this suit, who claims to be now the owner thereof under said conveyances. The east half of said league and labor of land is claimed by the other defendants in this suit (except Eli and Levi Langford) as the heirs of Eli Langford.

"It was proved that Mrs. Kempner, in consideration of said conveyance to her of the west half of said league and labor of land, paid the sum in cash of $1125 to the Ballinger National Bank, receiving a deed with general warranty, and that she had no actual knowledge of any wrong, fraud or irregularity in or about the issuance of the original certificate, if any, or the duplicate thereof, and had no notice of any such, further than such constructive notice as might be conveyed to her by the records of the General Land Office, as herein stated, or by the records and proceedings of the District Court of Red River County in the case of Eli Langford v. the Republic of Texas, as herein stated, or by the judgment of the Supreme Court of the Republic as aforesaid and the report of said case, as contained in Dallam's Reports of the decisions of the Supreme Court of the Republic of said case, but that she relied upon the validity of the patent. Said duplicate certificate issued by the Commissioner of the General Land Office is as follows:

" 'No. 33-4. Class First. Quantity, 1 League & 1 Labor. Duplicate Certificate. General Land Office, Austin, Texas, November 6th, 1874.—This is to certify that satisfactory evidence having been introduced of the loss of District Court certificate No. ——, Class First, issued by the District Court of Red River County to Eli Langford for one league and one labor of land, dated at the fall term District Court, 1841. This duplicate thereof will entitle the said Eli Langford to all the benefits granted in said original district court certificate. In testimony whereof, I hereunto set my hand and affix the impress of the seal of said office, the date first above written. [Seal] J. J. Gross, Commissioner. Voucher File 2598. Indorsed: File 1625. Bexar First Class Dup. Cert 33-4. Eli Langford. Filed December 17-74. J. J. Gross, C.'

"Across the face of said duplicate certificate is the following: '1 League and 1 Labor, patented June 14-75. J. J. Gross, Comr.'

"It was proven that the original certificate referred to in said duplicate as having been issued by the District Court of Red River County is the same as that referred to in the proceedings in said court in the case of Eli Langford v. The Republic of Texas, hereinbefore referred to.

"Plaintiff introduced in evidence certified copy from the records of

the General Land Office of a grant made by George Antonio Nixon to Mary Langford, given in the town of Nacogdoches on the 8th day of November, 1835, and it was proven that Mary Langford, the mother of the aforesaid defendants, heirs of Eli Langford, had issued to her a grant of a headright league of land in Texas as a colonist, and that she was at the time, the wife of the said Eli Langford."

*Opinion.*—The main ground for reversal is predicated upon the proposition that Mrs. Kempner was an innocent purchaser. As against the State, there can be no such thing as an innocent purchaser, when the officer who attempts to issue the title acts without authority of and contrary to law; because official action under such circumstances is absolutely void and not merely voidable; and no one can claim protection of any kind by or through an official act that is absolutely void. "It is too firmly settled by the whole current of judicial decisions on the point to be now questioned that the issuance of a patent is a ministerial act and must be performed according to law. If it is issued against the law it is void." Day Co. v. State, 68 Texas, 541; Gunter & Munson v. Meade & Bomar, 78 Texas, 634; United States v. Stone, 2 Wall., 535.

If the Governor and Commissioner of the Land Office should issue patents upon surveys purporting to have been made under certificates for land, when in fact no such certificates ever existed, such patents would be absolutely void, and there could be no innocent purchaser of such void titles.

In Gunter & Munson v. Meade & Bomar, supra, it was held that a duplicate certificate issued by the Commissioner of the Land Office, when no original certificate had ever existed, conferred no right whatever.

The duplicate certificate in the case at bar did not purport to, and under the law could not confer any greater right than existed by virtue of what is termed in the duplicate, "said original district court certificate." What was that certificate, and what right did it confer? Section 1 of the Act of February 4, 1841, under which Langford brought his suit, provides that "should the jury find in favor of the claimant, it shall be the duty of the clerk to make out a certificate to that effect, under the seal of the court and approved by the presiding judge, which certificate shall be handed over to the successful claimant." But additional sections of the same act read as follows:

"Sec. 2. That it shall be the duty of the clerks of the several district courts, within twenty days after adjournment of each and every term of said court, to transmit to the Commissioner of the General Land Office a list of all the individuals who may have been successful in the suits instituted under this act in his said county, specifying the amount of land to which they were declared by the court and jury to be entitled; which certificate shall be under the seal of said court, to which shall be appended the affidavit of the said district court clerk of the correctness of said list; and it shall further be the duty of the chief justice of the county in the district court of which said suit was

decided in favor of the claimant, to examine the records of said district court of his county, and if the list is found to be correct, it shall be his duty to certify to the same under the seal of the county court.

"Sec. 3. That upon the receipt of said lists from the district clerks by the Commissioner of the General Land Office, and upon the claimant presenting his certificate as before provided for to said commissioner, it shall be the duty of said Commissioner, forthwith, to issue a patent on said claim, in the same manner as if the said claim had been recommended as genuine and legal by the board of commissioners appointed under the act to which this is a supplement.

"Sec. 6. That upon good and sufficient cause shown, the court may grant a new trial, either to the claimant or to the Republic; provided that not more than one new trial shall be granted to either party."

These sections make it manifest that the mere issuance and delivery of the certificate referred to in the first section did not empower the Commissioner of the Land Office to grant land to the claimant. In addition to such certificate, it was necessary that the report required by the second section should be filed in the Land Office, and shows that the claimant was entitled to land, before the commissioner was authorized to grant the land.

As to Langford's claim, it is not shown that any such report was made; and it could not have been truthfully made because, at the time the law required the clerk to make up his report, the verdict and judgment in Langford's favor had been set aside and annulled.

Hence it would seem that as the certificate issued by the clerk, as authorized by the first section of the law, would have disclosed only partial compliance with that law, it would not have authorized the issuance of a patent, *even before the verdict and judgment were set aside.* But undoubtedly *after* the verdict and judgment had been set aside, the certificate, which merely stated that they had been rendered, was no foundation for any claim to land, and conferred no power upon the Commissioner of the Land Office or anyone else to grant land to Langford or his heirs; and we therefore hold that the duplicate certificate and patent issued thereon were absolutely void.

While we do not regard the question of notice as material, on account of the fact that the patent was absolutely void, still we can not sustain the contention that because no motion for a new trial can now be found among the file papers in Langford's suit in the District Court of Red River County, therefore reasonable diligence would not have disclosed the fact that a new trial had been granted and a verdict and judgment rendered against Langford. The file papers in that case contain a notice served on Langford, showing that a new trial had been granted, and an appeal bond given by him, which must have shown on its face that a verdict and judgment had been rendered against him.

No error has been shown, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.